22480. DYE v. THE STATE.

Argued May 11, 1964—Decided June 1, 1964—
Rehearing denied June 22, 1964.

*Robert E. Knox, Warren D. Evans,* for plaintiff in error.

*Kenneth E. Goolsby, Solicitor General, Randall Evans, Jr., Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

GRICE, Justice. Bernard Dye was indicted by the grand jury of McDuffie County for the murder of Otis Rabun by shooting him with a rifle. A superior court jury in that county has three times found him guilty without a recommendation of mercy. Following the first trial, that court granted his motion for a new trial. After the second trial, it denied such a motion, but this court reversed because of an erroneous charge on mutual combat. *Dye v. State*, 218 Ga. 330 (127 SE2d 674). Following the third trial his motion, consisting of the general and eight special grounds, was denied. That ruling occasions this review.

■ Insofar as the three general grounds of the amended motion are concerned, there was some conflict in the evidence. These grounds were not insisted upon in the brief of plaintiff in error and were expressly abandoned in his oral argument. Hence they will not be considered here.

■ In ground 4 complaint is made of the court permitting the deceased's widow, a State's witness, to remain in the courtroom during the trial and the examination of other witnesses after the rule had been invoked and witnesses sequestered by the court, and also in allowing her to testify. It is urged that she was not the prosecutor or any law enforcement officer or other official who had investigated the facts surrounding the homicide so as to except her from the rule; that the State had made no showing as to how she was needed in the conduct and prosecution of the case; and that she remained in the courtroom and heard four other State's witnesses testify before she testified, instead of being called as the first State's witness.

This ground, as we evaluate it, is not meritorious.

In construing *Code* § 38-1703, which is the basis for "the rule" of sequestering witnesses, this court has held that "While [*Code* § 38-1703] seems to confer upon either party the right to have the witnesses of the other examined out of the hearing of each other, and directs that the court shall take proper care to effect this object so far as practicable and convenient, yet this court has ruled that this matter is within the discretion of the trial judge, and has refused to reverse a ruling permitting one or more of the witnesses for the respective parties to remain to assist

counsel in the trial of the case." *Shaw v. State,* 102 Ga. 660, 667 (29 SE 477). See also, *Thomas v. State,* 27 Ga. 287.

In the instant case the State's counsel stated in his place that this witness was needed in the trial. The evidence shows that she was present from the inception to the end of the fatal altercation, that the shooting occurred in her home, and that she, the victim's wife, was the central figure in it. Thus, she was extremely familiar with the facts of the case and was in position to assist in the prosecution. We see no abuse of discretion in allowing her, upon the request made, to remain in court.

Nor was it error to permit her to testify under these circumstances. The fact that she remained in the courtroom while others testified did not disqualify her as a witness. *Code* § 38-1703, supra; *McWhorter v. State,* 118 Ga. 55 (6) (44 SE 873); *Phillips v. State,* 121 Ga. 358 (3) (49 SE 290).

■ Ground 5 urges that the court erred in charging the jury, without request, as to voluntary drunkenness not being a defense to crime, because such principle was not authorized by or adapted to the evidence, there being no testimony that the defendant was "drunk." The defendant's position is that he relied upon self-defense, not drunkenness, and that the charge on drunkenness was confusing, assumed that a crime had been committed and prejudically injected an issue not made by the evidence.

In our view, it was not error to charge upon this principle.

The evidence amply authorized such charge. The deputy sheriff testified that on the occasion under investigation the accused "was under the influence of intoxicating liquors," and gave his reasons therefor. The sheriff swore that he "was under the influence of intoxicants." The deceased's widow said that he "staggered." As to the sufficiency of this evidence to authorize a charge on drunkenness, compare *Adkins v. State,* 198 Ga. 720 (2) (32 SE2d 768).

■ It is contended in grounds 6 and 7 that two portions of the charge relating to justifiable homicide had the effect of instructing the jury that in order for them to acquit the accused, he would have to prove his innocence beyond a reasonable doubt. Specifically, one ground is directed to the following language: "If you have a reasonable doubt as to his guilt it is your duty

to give him the benefit of that doubt and acquit him." The other complaint is leveled at these words: "If you should have a reasonable doubt as to the defendant's guilt of the offense of murder, you could not convict him of that offense at all, but it would be your duty to acquit him so far as the charge of murder is concerned."

As to both of those, it is contended that in charging "If you [should] have a reasonable doubt as to his guilt . . ." the court placed upon the defendant the burden of establishing his innocence beyond a reasonable doubt, rather than placing the burden upon the State to establish his guilt beyond a reasonable doubt.

We do not regard either of these portions of the charge as subject to this criticism. In each instance, the sentence just preceding the language complained of charged that "If you believe beyond a reasonable doubt that . . . [the defendant killed without justification] then, in that event, gentlemen, you would be authorized to find the defendant guilty of" murder. The language complained of, instead of placing any burden of proof on the defendant, emphasizes to the jury that in order to find him guilty they must have no reasonable doubt but that he is guilty.

■ Ground 8 asserts that it was error to admit into evidence testimony of a witness that he overheard the defendant say "if he had it to go over with again he would shoot the whole damn works up," since such statement was made while the defendant was in jail some considerable time after the homicide. The evidence does not show when the statement was made, except that it was not on the night of the homicide. The trial court admitted this testimony "as a circumstance for the jury, along with the other evidence in the case to decide about the state of the person's mind, his feelings, or any motive of premeditation he might have had at the time," and so instructed the jury.

We deem this evidence admissible for the jury to consider, with the other evidence, on the issue of whether the defendant slew the deceased with malice aforethought or justifiably in order to save his own life.

In *Meeks v. State*, 51 Ga. 429, it was urged that the court

erred in permitting a witness to testify that the day after the difficulty the defendant said that he wished the victim "was dead and in hell, if he [the defendant] had to be hung the next minute." This court held the admission of testimony of this statement to be proper. It said that such words "indicate strong malice against his opponent at that time, and furnish a fair ground for an inference of malice at the time of the rencounter. Statements, both before and after, are indications showing the condition of the mind at the time of the act, and are circumstances having more or less weight according to the time of their utterance and the circumstances of the case. We think these statements were not too long after. The time that had elapsed weakens their force, but we think them competent to be introduced, leaving their weight to the jury." (P. 432.)

■ In ground 9 it is averred that it was error to admit testimony of a witness that he believed the defendant needed to be in "a cell like that" because "you never can tell about him, what he is going to do." It is asserted that this was a mere conclusion, that it was intended to and did convey to the jury the erroneous and prejudicial impression that the defendant was a highly dangerous and unruly prisoner, instead of that such incarceration was due merely to the seriousness of the offense with which he was charged, and that it tended to place in issue the character of the defendant.

This testimony, as we analyze it, was not erroneously admitted. It was given on re-direct examination after the witness had been cross examined by defendant's counsel as to the nature of the defendant's cell. With the description thus elicited from the witness, the State could explore the same area by explaining that the defendant was placed in that particular cell because it "is the safety cell" and the reason therefor.

■ Ground 10 complains of the denial of the defendant's motion for mistrial. That motion was: ". . . in view of the insistence of counsel for the State continuously using the word, threat, after Your Honor has instructed the jury and has advised us that the matter should not be gone into, I respectfully move for a mistrial on the ground that the remarks are prejudicial to my client." The motion for new trial urges that the jury was

given the erroneous impression that it was the defendant who had threatened the witness and that it improperly placed the defendant's character in issue.

In the view which we take of what occurred here, the denial of the motion for mistrial was not error.

The issue then before the court was the admissibility of testimony that the witness had been threatened. Counsel for the State had asked a witness: "Somebody has threatened you in this case?" The witness answered "Yes," and counsel then asked "Who was it?" The defendant's counsel objected and colloquy ensued among him, the judge and counsel for the State as to its admissibility, and the words "threat" and "threaten" were used by all three. The contention of the State was that the testimony was admissible to explain why the witness had contradicted his previous testimony. It made no contention that the defendant had anything to do with the threat, and in fact stated, "We don't seek to use it against the defendant. We know he didn't do it."

The court ruled the testimony inadmissible and instructed the jury not to consider that the witness had been threatened by anyone. After this instruction the court remarked "As I understand [defendant's counsel] has only asked about [the witness's] testimony in previous cases," and counsel for the State replied, "[Defendant's counsel] hasn't asked about any threats, we know that." It was at this point that defendant's counsel moved for a mistrial. Counsel for the State had used the word "threat" only one time after the judge's ruling and instruction and that was in response to a remark of the judge. The court overruled the motion and again instructed the jury ". . . . don't consider that the witness has been threatened by anyone, pro or con . . ."

Under these circumstances, we see no abuse of discretion by the trial judge in denying the motion for mistrial.

■ In ground 11 complaint is made of the admission in evidence of transcripts of the defendant's statements made in his two former trials. It is urged that such statements should not be admitted because they were unsworn, were made at other trials in which the defendant was granted new trials, and because he was present and made an unsworn statement in this trial.

We do not deem the statements inadmissible for any of the reasons urged.

In the former statements, the defendant recounted the details of the altercation between him and the deceased and the events preceding it, so as to indicate that the deceased shot him without the slightest provocation or justification. Yet in his statement in in this trial he said only: "It's done got here lately where I can't remember. I can't remember good. And if I have done anything that I shouldn't have done or hurt anybody, or shot anybody, I don't know anything about it, and I am just as sorry as I can be. I can't remember where I am at half of the time."

In the face of the quoted statement, those made in his two former trials for the same offense were admissible for the jury to consider whether he could or could not remember what transpired.

Since none of the grounds of the motion for new trial are meritorious, the judgment denying such motion was proper.

We deem it particularly appropriate in this case, where there have been three trials and two appearances in this court, to commend this defendant's court-appointed counsel. They have demonstrated fidelity, industry and ability. They have discharged their obligation to client and court in the highest tradition of the legal profession.

*Judgment affirmed. All the Justices concur, except Quillian, J., who dissents.*